United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHAHIN HABIEBH,

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Case No. 1:26-cv-06103-NW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: ECF Nos. 1, 2

Petitioner Shahin Habiebh was, at the time this case was filed, detained at the California City Immigration Processing Center pending the resolution of his removal proceedings. He initiated this case by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1, in which he alleged that his detention violated both the Due Process Clause of the United States Constitution, the Immigration and Nationality Act, and the *Accardi* Doctrine. He simultaneously moved for a temporary restraining order ("TRO"), ECF No. 2.

On August 11, 2026, the Court granted the TRO, finding in part that Petitioner had shown a strong likelihood of success on his procedural due process claim. *See Habiebh v. Chestnut*, No. 1:26-CV-06103-NW, 2026 WL 2327757, at *1–2 (E.D. Cal. Aug. 11, 2026). Petitioner was released from detention, and the Court enjoined and restrained Respondents from re-detaining Petitioner absent compliance with constitutional protections—including at a minimum pre-deprivation notice describing the change of circumstances necessitating his arrest and detention, as well as a timely hearing at which the government would bear the burden of establishing that Petitioner poses a danger to the community or flight risk by clear and convincing evidence. *Id.* at *2. It further ordered Respondents to show cause why a preliminary injunction should not issue, directing them to indicate in their response whether they opposed the Court entering an order

directly on the underlying petition. *Id.* Respondents filed a timely response on August 18, 2026 in which they explained that they "do not oppose the Court entering an order directly on the habeas petition," but that they opposed both injunctive and habeas relief for the same reasons articulated in their response to the TRO.

For the reasons that follow, the Court grants the petition for writ of habeas corpus as to Petitioner's procedural due process claim (count 2). Because it is unnecessary to resolve the remaining counts in the petition, the court declines to do so. The injunctive relief previously granted, ECF No. 13, is made permanent.

## I. BACKGROUND

Petitioner Shahin Habiebh is a twenty-six-year-old citizen of the Netherlands. ECF No. 1 at 1. In September 2023, he was lawfully admitted to the United States on the Visa Waiver Program ("VWP") with an expiration in November 2023. *Id.* at 6. On October 11, 2024, Petitioner submitted an application for asylum with USCIS, in which he disclosed his address. *Id* at 6, 28–39. He also applied for work authorization with USCIS, which was granted and allegedly remains valid through 2030. *Id.* at 51. In September of 2025, Petitioner became engaged to a United States citizen, and the two plan to marry. *Id.* at 50.

In February 2026, Petitioner's asylum application was referred to an Immigration Judge for "asylum only" proceedings in the Newark Immigration Court in Newark, New Jersey. *Id.* at 26–27. He received notice of this through the mail. *Id.* at 6. Though immigration authorities were made aware of his presence in the United States and home address through the filing his asylum application, Petitioner was not detained at the outset of his asylum proceedings, nor when he attended a hearing in the Immigration Court on June 8, 2026, to begin adjudication on his asylum claim. *Id.* at 2, 41.

Instead, Petitioner was taken into ICE custody during a traffic stop on June 17, 2026. *Id.* at 2. Petitioner claims to have been working at the time. *Id.* at 15. He was subsequently transferred to the California City Immigration Processing Center and was detained there until the Court granted his TRO on August 11, 2026. Based on the records before the Court, there has been no ruling on Petitioner's asylum claim, and he has not been ordered removed from the United States.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues that due process required he be provided pre-deprivation process prior to his arrest and detention. *See* ECF No. 1 at 14–15. In opposition, Respondents argue that Petitioner was lawfully detained pursuant to 8 U.S.C. § 1187 (c)(2)(E) as he was a "VWP" violator. ECF No. 10 at 2. The Court addresses Respondents' statutory argument before turning to the merits.

### A. Detention Authority

In granting the TRO, the Court rejected Respondents' argument that Petitioner could be lawfully detained without process under 8 U.S.C. § 1187 (c)(2)(E) as "[n]othing in [§ 1187(c)(2)(E)] provides DHS authority to arrest and detain someone who has overstayed the period permitted by the VWP." *Wei v. Chestnut*, No. 1:26-CV-01065-DJC-CKD, 2026 WL 412203, at *1 (E.D. Cal. Feb. 13, 2026). Indeed, the subsection which Respondents rely on does not address detention, and instead reads:

> The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for

> any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C. § 1187(c)(2)(E). Accordingly, numerous courts have found that § 1187(c)(2)(E) does not provide the government with detention authority, and the Court does the same here. *Quispe v. Chestnut*, No. 1:25-CV-2002 CSK, 2026 WL 654577, at *2 (E.D. Cal. Mar. 9, 2026) (explaining that "most federal courts that have directly addressed whether a noncitizen who has violated the Visa Waiver Program can be detained pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention" and collecting cases).

**B. Due Process**

Respondents do not otherwise provide any substantive response to Petitioner's due process claim. Accordingly, for the reasons explained in the Court's order granting the TRO, and in more detail below, the Court finds that Petitioner is entitled to relief on his due process claim as he has a protected liberty interest in his continued freedom entitling him to process prior to his detention.

Judges in this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds—pursuant to the government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process. *See, e.g.*, *De La Garza v. Albarran*, No. 25-CV-10305, 2025 WL 3485157, at *4 (N.D. Cal. Dec. 4, 2025) (finding protected liberty interest where, after sixteen years of residency in the country, petitioner applied for lawful permanent residence and completed biometrics processing several months later in connection with that application, but was detained at an ICE check-in the following year); *Villanueva-Montanez v. Lyons*, No. 2:26-cv-00954, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) (explaining that a petitioner obtained a protected liberty interest where he "enter[ed] the United States lawfully[,]" sought lawful status "such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration").

The same reasoning is applicable here. Petitioner was lawfully admitted to the United

States in September 2023. And though his Visa later expired, the government made no effort to detain him, even after he voluntarily notified the government of his address by applying for asylum. Indeed, USCIS instead granted him work authorization through 2030 and mailed him his notice indicating that he was placed in asylum-only proceedings. Petitioner was again not detained when he attended his last asylum-only hearing on June 8, 2026. By concluding that there was no need to detain Petitioner after his visa expired, and instead acquiescing to his continued presence in the United States by facilitating his asylum application, the government vested in Petitioner a liberty interest in his continued freedom.

Given that Petitioner possesses a liberty interest, he was entitled to process commensurate with that interest prior to his detention. Each factor of the *Mathews v. Eldridge*, 424 U.S. 319 (1976) framework—(1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest—favors Petitioner. *Id.* at 335. His interest in freedom from physical detention is weighty. *Zadvydas*, 533 U.S. at 690. The risk of erroneous deprivation from seizing an asylum applicant without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high. In contrast, the government's interest is low as bond hearings are routine, and Respondents have identified no reason a custody hearing could not have preceded, rather than followed, Petitioner's detention.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the petition for writ of habeas corpus is GRANTED as to count 2, and the court ORDERS as follows:

1. The order entered at ECF No. 13 is made permanent. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and hold a pre-deprivation bond hearing before a neutral arbiter at which the government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

2. This Order does not address the circumstances under which Petitioner may be detained if he becomes subject to a final order of removal.

United States District Court
Eastern District of California

3. The Clerk of Court is directed to close this case and enter judgment for Petitioner. This order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: August 19, 2026

Noël Wise
United States District Judge